## Eliza G. Stephens *v.* Joel C. Stephens *et al.*

CONTRACT　*Guaranty of value of property.*　Where tenants in common consent to a partition of land, a written agreement by one of them, which guarantees a certain value to a particular division, whenever the assignee of that portion wishes to sell, upon his releasing all claims to the residue of the estate, is a contract based upon a valid consideration, binding upon the party making it, and is susceptible of specific execution.

### FROM WILLIAMSON.

Appeal from the decree of the Chancery Court. WM. S. FLEMING, Chancellor.

TURLEY & PERKINS for complainant.

CAMPBELL, MCEWEN & BULLOCK, for defendant.

NICHOLSON, C. J., delivered the opinion of the Court.

Eliza G. Stephens and Robert L. Stephens were tenants in common of a tract of land of 250 acres, situated in Williamson County. Robert L. owned four-fifths, and Eliza G. one-fifth. Instead of having the land partitioned according to their respective interests, by Commissioners, they agreed to a division according to boundaries designated, which included 62 acres 23 poles in one lot, and which lot Eliza G. agreed to take as her one-fifth of the land, and to release and relinquish to Robert L. all claim to the remainder of

the land, or the improvements thereon; but upon Robert L. agreeing, that in the event Eliza G. wishes to sell her land, he would make it bring $1,750, the same as the portion the other heirs received for their interest. This agreement was reduced to writing, and signed by the parties, dated October 18, 1869. The parties took possession of their respective portions of the land so divided. Robert L. died in February, 1872, no wish having been expressed by Eliza G. previous to that time to sell her portion of the land. After his death she notified the administrator of Robert L. that she wished to sell, and proposed to him to carry out the agreement of his intestate, by taking the land, or making it bring $1,750. Upon the refusal of the administrator to carry out the agreement, this bill was filed by her against the administrator, widow and infant child of Robert L. for a specific execution of the agreement.

Chancellor Fleming held, that complainant was entitled to a specific execution of the agreement, and for this purpose decreed a sale of the land, and that the estate of Robert L. would be liable to make up the deficit, if the land should sell for less than $1,750. The defendants appealed.

The brother and sister were tenants in common of the 250 acres, the brother owning four-fifths and the sister one-fifth. In this condition of the land, the agreement of the brother to make the portion allotted by consent to the sister, bring $1,750, whenever she might wish to sell, upon her releasing the claim to

the residue of the land and the improvements, was based upon a valuable consideration, and was binding on the brother. It was not an obligation on his part to become the purchaser of her portion at $1,750, whenever she might wish to sell, but, no matter who might become the purchaser, he was bound to make the share yield to her $1,750. There was no time fixed which she was to propose to sell, nor was any provision made by the brother against a depreciation in the value of the land. To induce her to accept the portion allotted to her, and to release her claim to the residue and to the improvements thereon, he became bound to take the risk as to the depreciation in the value of the land. He lived over two years after the agreement was made, during which time, as far as we can see, both parties recognized the obligation as subsisting. There are circumstances stated in the pleadings, which render it probable that the brother intended and expected to take the land himself at $1,750 whenever his sister desired it, but that the delay on her part to propose a sale suited his condition, in view of the fact that he was indebted for some of the other shares.

But however this may be, the contract rested on sufficient consideration, was subsisting and in force at his death, is plain and unambiguous in its terms, and was properly susceptible of a specific execution, as decreed by the Chancellor.

We see no error in the decree, and affirm it with costs.